Louis F. ROTHERMEL, Individually and as Independent Executor, Petitioner,

v.

Sarah R. Rothermel DUNCAN et al., Respondents.

No. A–9542.

Supreme Court of Texas.

July 10, 1963.

Rehearing Denied July 31, 1963.

W. H. Betts, Hempstead, for petitioner.

Roland B. Voight, Williams, Lee & Lee, Houston, McLain & Harrell, Conroe, J. C. McEvoy, Hempstead, for respondents.

SMITH, Justice.

This is a suit filed by Sarah R. Rothermel Duncan et al. in the County Court against Louis F. Rothermel, individually and as independent executor of the estate of Sallie A. Rothermel, contesting the validity of the will of Sallie Rothermel, deceased. On March 7, 1960, trial was held in the County Court, and the contest was denied. Upon the trial of the case in the District Court the plaintiffs pleaded both mental incapacity and undue influence, but the latter ground was the only issue submitted to the jury. The jury found that the contested will was the result of undue

influence exercised upon the deceased by her son, Louis Rothermel. Based on the jury verdict the trial court entered judgment in favor of the contestants. The Court of Civil Appeals affirmed. 365 S.W.2d 398.

The issue before this court is whether the record contains any evidence of probative force to support the finding of the jury that undue influence was exercised by Louis F. Rothermel in the execution of the will of Mrs. Sallie A. Rothermel. We have concluded that such evidence does not exist in this record. Therefore, the judgments of both the trial court and the Court of Civil Appeals are reversed.

We shall confine our statement of the evidence to that relied upon by the contestants to sustain the jury finding. The record reveals that Sallie Rothermel was the mother of three children; Louis, a daughter and Bill. In 1906 Sallie Rothermel's husband died. At the time of their father's death Louis was sixteen years of age and Bill was one. Upon the death of his father, Louis left school and assumed the responsibility of providing support for his mother, sister and Bill. Louis' sister died in 1916.

In 1918 Louis was married, and in 1920 Louis and his wife, Mrs. Rothermel and Bill moved from Pennsylvania to Houston, Texas. Since Bill was sixteen years younger than Louis, Mrs. Rothermel leaned more towards Louis than Bill for help and assistance, especially in the earlier years of her widowhood. Mrs. Rothermel did not remarry. The record reflects that at all times the Rothermel family was a close one, and that Louis continued to support his mother until investments made by him for and in Mrs. Rothermel's name became sufficient to provide for her. Mrs. Rothermel was equally devoted to her two sons, and in 1939 she executed her first will whereby her estate was devised equally to her two sons.

Subsequently, Bill and Louis associated in the very successful business of the Maritime Oil Company, and in 1952 Bill became a partner of Louis in this business.

The partnership lasted until Bill's death in 1955. Mrs. Rothermel was greatly grieved over the loss of her younger son.

After Bill's death Mrs. Rothermel resided with Bill's family from October, 1955, to March, 1956. From March, 1956, to October, 1956, she resided with Louis. From October, 1956, to October, 1957, Mrs. Rothermel was in residence at an old ladies' home in Houston. On or about October 1, 1957, Louis took his mother to his farm in Waller County, some 50 miles from Houston. Thus, began the chain of events leading to the filing of this suit.

Louis maintained and operated a poultry and egg business on his farm and had employed a single woman named Mary Blumberg who cared for the business. From the time of her arrival at the farm, Mrs. Rothermel lived with Mary in her 4-room house on the farm. Mrs. Rothermel was then 93 years of age, and suffered from the common maladies of age: she was hard of hearing, her eyesight was bad, her hands shook, and she suffered from arthritis and diabetes. For several years Mrs. Rothermel's feeble condition required care and companionship—this became the responsibility of Mary Blumberg.

Soon after she was taken to the farm, Mrs. Rothermel fell and suffered a broken rib. On this occasion she was taken to a hospital in Hempstead, Texas, where she remained for two or three days. At the farm Mrs. Rothermel was "very sparsely" visited by her other relatives.

Mrs. Rothermel was devoted to Louis; she trusted him completely and relied entirely upon him to handle her affairs, which he did. Louis took care of all of her business correspondence and affairs and signed her checks. All of Mrs. Rothermel's papers, including the 1939 will, were kept in Louis' safe-deposit box in Houston.

Louis' testimony reveals that in the latter part of 1957 or in the early part of January of 1958 his mother requested that he bring to her the 1939 will, which he did. The 1939

will remained in her possession for several days, and she conferred with Louis and informed him that she wanted to make another will and leave everything to him. Although he was aware of the possible double federal tax consequences of being the sole beneficiary of his mother, Louis did not try to explain this to his mother. Louis testified that he drew the new will in Houston, and either used the 1939 will or one of his own as a pattern, and that he suggested to his mother that her will provide that if he predeceased her, his daughter would be her executrix and that her property be divided equally among her grandchildren and great grandchildren. No attorney was consulted; and after the new will was drawn, Louis took it to his mother who kept it several days.

On January 30, 1958, the new will was signed by Mrs. Rothermel before two witnesses, Mary Blumberg and her brother, August Blumberg, who was another farm employee of Louis. The witnesses were gathered by Louis. The will was signed by Mrs. Rothermel without comments, questions or suggestions, and at a time when Louis was in the house but not in the room where the signing of the will took place. No one read or explained the will to her or saw her read the will.

After the will was signed, it was delivered to Louis by his mother. He took possession of the will and placed it in his safe-deposit box, and no one knew of its execution except the witnesses thereto and Louis until sometime after his mother's death. Mrs. Rothermel discussed the execution of this will with no one except Mary Blumberg. Mrs. Rothermel continued to live with Mary Blumberg until her death in October of 1958 at 94 years of age. The new will appointing Louis independent executor of his mother's estate was probated by the County Court on October 7, 1958.

After this suit was filed Louis went to the home of two witnesses at the trial to

inquire if either of them had knowledge of any prior will of Mrs. Rothermel. It further appears that shortly after the probate of the will, and before this suit was filed, Louis made out checks for $1000 each: one was sent to Mary Blumberg, and a check in a like amount was mailed to each of his two nieces, two nephews (respondents herein), a daughter and two grandchildren, totaling $8000.

Other evidence in the record reveals that Mrs. Rothermel loved the children of her two sons equally. Disinterested witnesses had heard Mrs. Rothermel declare numerous times, within five years of her death, that she intended to leave her estate equally to her grandchildren.

It would unnecessarily lengthen this opinion to attempt to analyze each item of evidence which the contestants claim is some evidence of undue influence. Mental incapacity and undue influence was alleged, and the record reflects that evidence was introduced in an effort to support both grounds.

The contestants select from the summarized evidence above three sets of circumstances which they deem sufficient to bring this case within the holding of this court in the case of Long v. Long,[1] 133 Tex. 96, 125 S.W.2d 1034, that the evidence introduced would support a finding of the exercise of undue influence. The particular facts of this case which the contestants claim should support a similar conclusion are: (1) the fragile condition of Mrs. Rothermel due to age and sickness; (2) Louis, the beneficiary, "generally looked after and supervised most of the business affairs and business interests of his mother"; and (3) the circumstances surrounding the signing of this will.

No two cases involving undue influence are alike, and each case must stand or fall depending upon the legal sufficiency of the facts proved. Because of this it does not

1. See: Long v. Long, Tex.Civ.App., 98 S.W.2d 236; Long v. Long, Tex.Civ.App., 129 S.W.2d 1206; Long v. Long, 133 Tex. 623, 138 S.W.2d 798.

necessarily follow that it should be held in this case, as it was in the Long case, that the finding of undue influence has support in the record.

Undue influence in the procurement of a testament is a ground for its avoidance separate and distinct from the ground of testamentary incapacity; for while testamentary incapacity implies the want of intelligent mental power, undue influence implies the existence of a testamentary capacity subjected to and controlled by a dominant influence or power. Long v. Long, supra; Besteiro v. Besteiro, Tex. Com.App., 65 S.W.2d 759. Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See: Stewart v. Miller, Tex.Civ.App. (1925), 271 S.W. 311, wr. refused; Olds v. Traylor, Tex.Civ.App. (1944), 180 S.W.2d 511, wr. refused.

The burden of proving undue influence is upon the party contesting its execution. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138.

It cannot be said that every influence exerted by one person on the will of another is undue, for the influence is not undue unless the free agency of the testator was destroyed and a testament produced that expresses the will of the one exerting the influence. Long v. Long, supra. Indeed it has even been held that one may request or even importune and entreat another to execute a favorable dispositive instrument; but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker, they will not taint the validity of the instrument with undue influence. See: Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208, and cases cited therein.

Influence that was or became undue may take the nature of, but is not limited to force, intimidation, duress, excessive importunity or deception used in an effort to overcome or subvert the will of the maker of the testament and induce the execution thereof contrary to his will. The courts of Texas treat the exertion of such influence in the execution of a dispositive instrument as a species of legal fraud. See: Curry v. Curry, supra.

The exertion of influence that was or became undue is usually a subtle thing and by its very nature usually involves an extended course of dealings and circumstances. Thus, it is settled that the elements establishing undue influence may be proved by what is known as circumstantial, as well as by direct, evidence. Long v. Long, supra. In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influence, if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the testator and resulted in the execution of the testament in controversy, the evidence is sufficient to sustain such conclusion. Barksdale v. Dobbins, Tex. Civ.App (1940), 141 S.W.2d 1035, wr. refused. However, the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence. Stewart v. Miller, supra. This is so because a solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set

aside upon a bare suspicion of wrongdoing. Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358.

Generally, the establishment of the existence of an influence that was undue is based upon an inquiry as to the nature and type of relationship existing between the testator, the contestants and the party accused of exerting such influence. The establishment of the exertion of such influence is generally predicated upon an inquiry as to the opportunities existing for the exertion of the type of influence or deception possessed or employed, the circumstances surrounding the drafting and execution of the testament, the existence of a fraudulent motive, and whether there has been an habitual subjection of the testator to the control of another. Where there is competent evidence of the existence and exercise of such influence, the issue as to whether it was effectually exercised necessarily turns the inquiry and directs it to the state of the testator's mind at the time of the execution of the testament, since the question as to whether free agency is overcome by its very nature comprehends such an investigation. Scott v. Townsend, supra. The establishment of the subversion or overpowering of the will of the testator is generally based upon an inquiry as to the testator's mental or physical incapacity to resist or the susceptibility of the testator's mind to the type and extent of the influence exerted. Words and acts of the testator may bear upon his mental state. Curry v. Curry, supra. Likewise, weakness of mind and body, whether produced by infirmities of age or by disease or otherwise, may be considered as a material circumstance in establishing this element of undue influence. Long v. Long, supra. Finally, the establishment of the fact that the testament executed would not have been executed but for such influence is generally predicated upon a consideration of whether the testament executed is unnatural in its terms of disposition of property. Long v. Long, supra.

The evidence in the case at bar establishes that Mrs. Rothermel trusted Louis completely and relied entirely upon him to handle her affairs. The evidence likewise establishes that Louis had ample opportunity to exert influence upon his mother as to the execution of the testament in controversy, but evidence as to any deceit or fraud is lacking. It is the law in Texas that a will cannot be set aside on proof of facts which at the most do no more than show an opportunity to exercise influence. Burgess v. Sylvester, Tex.Civ. App. (1944), 177 S.W.2d 271; affirmed, 143 Tex. 25, 182 S.W.2d 358. The establishment of the circumstances of having an opportunity to exert such influence due to being in a position of caring for the person upon whom the influence is supposed to be exerted is equally consistent with the theory of innocence as it is with the theory of wrongdoing. Price v. Taliaferro, Tex.Civ. App. (1952), 254 S.W.2d 157, wr. ref. n. r. e. The exertion of influence that was undue cannot be inferred alone from opportunity, but there must be some testimony, direct or circumstantial, to show that influence was not only present but that it was in fact exerted with respect to the making of the testament itself. There is no such evidence here.

The evidence likewise establishes that Mrs. Rothermel was old and suffered from the common maladies of age. This evidence may be considered as establishing Mrs. Rothermel's physical incapacity to resist or the susceptibility of her mind to an influence exerted. However, such evidence does not establish that her mind was in fact subverted or overpowered at the time of the execution of the instrument in question.

A person of sound mind has a perfect legal right to dispose of his property as he wishes, and the testament in the case at bar makes an unnatural disposition of the property only in the sense that one child was preferred over the widow and children of another child. This circum-

stance is frequently present in cases involving the issue of undue influence, and it is only where all reasonable explanation in affection for the devise is lacking that the trier of facts may take this circumstance as a badge of disorder or lapsed mentality or of its subjugation. See: Craycroft v. Crawford, Tex.Com.App. (1926), 285 S.W. 275; Curry v. Curry, supra. The evidence in the case at bar does not support the conclusion that Mrs. Rothermel's testamentary disposition of her estate was unnatural.

The elements of the exertion and the effective operation of any influence possessed by Louis over his mother so as to subvert or overpower her will and cause the execution of this testament are not supported by any tangible evidence. Because of the disposition we make of this case we need not consider the other issues raised on this appeal.

The judgments of the Court of Civil Appeals and the trial court are reversed and judgment is here rendered that respondents take nothing.