Moore v. Saunders et al. 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-009-CV

     LEONA MOORE AS NEXT FRIEND
     OF ROBERT AUSTIN SAUNDERS II,
     AND LISA ANN SAUNDERS, AND
     RONALD AUSTIN SAUNDERS,
                                                                                              Appellant
     v.

     ELIZABETH SAUNDERS, ET AL.,
                                                                                              Appellees
 

From the County Court
McLennan County, Texas
Trial Court # 930600 PR1
                                                                                                    

O P I N I O N
                                                                                                    

      This case involves the contest of a will of Robert Saunders (Decedent). Ronald Saunders and
Leona Moore, acting as next friend of her children, Robert Saunders II and Lisa Saunders, appeal
from a summary judgment in favor of Elizabeth Saunders and others.


 Elizabeth Saunders is
Decedent's surviving spouse. Ronald Saunders, Robert Saunders II, and Lisa Saunders are all
children of Decedent, and Leona Moore is a former wife of Decedent. Ronald, Robert II, Lisa,
and Leona are referred to as "Contestants." 
      Decedent was diagnosed with pancreatic cancer in April 1992. He executed a series of five
wills between April 22 and August 10, 1992. He executed the first will while divorce proceedings
with Elizabeth were pending. In that will he left her $12,000 cash and twenty-five percent of the
stock in his corporation, but left the remainder of his estate to his children. The fifth and final
will, executed on August 10, 1992, left the bulk of his estate to Elizabeth, with bequests of
$125,000 in trust to each of his children. 
      Decedent died on October 7, 1993, and Dr. Richard Scott, who was named as independent
executor in the August 10 will, presented the will for probate. The Contestants objected, claiming
that the Decedent lacked testamentary capacity to execute the will or, alternatively, that he acted
under undue influence. 
      Elizabeth filed a motion for summary judgment, asserting that no genuine issue of material
fact existed regarding the Contestants' claims of undue influence and lack of capacity. 
Specifically, she claimed in the motion that Contestants "have no ability to provide this Court with
even a scintilla of evidence that Mr. Saunders was not fully capable of making his own preferred
disposition of property with all of the solemnities that the law requires." In other words, Elizabeth
moved for summary judgment on the Contestants' lack of evidence. The court granted the motion. 
      Both of the Contestants' points on appeal attack the propriety of the court's granting the
motion. We apply the well-established summary judgment rules,


 and specifically note that the
Texas Supreme Court has spoken on the non-movant's burden in a summary judgment proceeding:
The trial court may not grant a summary judgment by default for lack of an answer or
response to the motion by the non-movant when the movant's summary judgment proof is
legally insufficient. The movant still must establish his entitlement to a summary judgment
on the issues expressly presented to the trial court by conclusively proving all essential
elements of his cause of action or defense as a matter of law. 
See City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). A movant
is not entitled to a summary judgment merely because the non-movant's claims are weak or that
there is no evidence to support the claim. Garcia v. John Hancock Variable Life Ins., 859 S.W.2d
427, 436 (Tex. App.—San Antonio 1993, writ denied) (on rehearing). Testamentary Capacity
      Elizabeth, the proponent of the unprobated will, would have the burden at trial of proving that
Decedent possessed the requisite testamentary capacity at the time he executed it. See Croucher
v. Croucher, 660 S.W.2d 55, 57 (Tex. 1983). Testamentary capacity includes the ability or
capacity to know and understand the following: (1) the business in which the testator is engaged;
(2) the effect of the act of making the will; (3) the objects of his bounty and their claims upon him;
and (4) the general nature and extent of his property. Smith v. Smith, 389 S.W.2d 498, 503-04
(Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.).
      Because Elizabeth would have had the burden of proving Decedent's testamentary capacity
at trial, as movant, she must conclusively establish each element of testamentary capacity to obtain
a summary judgment. See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173
(Tex. 1995). A matter is not established as a matter of law if reasonable minds could differ about
the fact determination to be made from the evidence. Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex.
1994). 
      The only evidence Elizabeth attached in support of her motion for summary judgment was
excerpts from the depositions of Leona Moore and Alexander Haw, the attorney who prepared the
August 10 will. She attached Moore's testimony, not as supporting evidence, but rather as an
illustration of the Contestants' lack of evidence. Elizabeth relies solely upon Haw's deposition
to establish Decedent's testamentary capacity. 
      The following excerpts from Haw's deposition pertain to Decedent's capacity to make the
August 10 will: 
      Q:        What else occurred during August 10, 1992?
      A:        On August 10, 1992, I had a call from Mrs. Saunders to make revisions to a will,
and I believe that was to change the identity of a Mercedes automobile . . . . Then she
called again to say that—that Robert had been rushed out to the emergency room at
Providence. . . . [S]he hadn't been there and didn't know why he had been rushed out or
something like that, and if this will was ready, could I meet her out there and could we
get it signed, because it was right before he was going to go back up to Mayo, I think.
And we went out there and I went into the emergency room, and he was incoherent
and nothing he said made any sense and—I mean it didn't even come close to making any
sense, you know. And I went out and I said "Mrs. Saunders, this man is in no condition
to sign anything. He is just babbling."
And it turned out . . . . he came by late that afternoon or called from the car that he
was down in the parking lot and wanted so sign that will before he left within a few days
. . . so my secretary and I went down and went over it with him. We showed him the
changes and he signed the will. 
. . . 
      Q:        Was there any question in your mind about Mr. Saunders' competency or
whether—Was there any question in your mind as to whether he should be signing a will
that late afternoon on the 10th when he came by in the car?
      A:        The thing that gave me pause was that I had been with him at 11 in the morning and
he couldn't have told you what day it was or what time of the day it was or where he was
or anything. He was delirious. And I was struck by how calm and alert and rational he
was a few hours later.
      Haw's testimony that Decedent was "calm and alert and rational" just a few hours after he
appeared to be "babbling" and "delirious" does not conclusively establish all of the elements of
testamentary capacity, as reasonable minds could draw different conclusions from his testimony
about Decedent's capacity to make a will. Therefore, Elizabeth did not establish as a matter of
law that Decedent possessed such capacity, and the court erred when it granted the summary
judgment on the issue of testamentary capacity. See City of Houston, 589 S.W.2d at 678.
Undue Influence
      The Contestants would bear the burden of proof at trial on a claim of undue influence. See
Rothermel v. Duncan, 369 S.W.2d 917, 922 (Tex. 1963). There are three elements of undue
influence: (1) the existence and exertion of influence; (2) the effective operation of such influence
so as to subvert or overpower the mind of the testator at the time of the execution of the will; and
(3) the execution of a will which the testator would not have executed but for such influence. Id. 
      To establish her right to a judgment as a matter of law on an issue on which she does not bear
the burden of proof at trial, Elizabeth must conclusively negate at least one of the foregoing
elements. See Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). As
previously noted, the only evidence Elizabeth attached in support of her summary judgment was
excerpts from the depositions of Leona Moore and Alexander Haw. Again, Moore's testimony
is attached only to point out the lack of evidence to support the Contestants' claim, which, even
if true, would be of no consequence unless and until Elizabeth conclusively negated one of the
elements of the Contestants' claim. See City of Houston, 589 S.W.2d at 678.
      Haw did not offer any testimony to conclusively negate any element of undue influence. In
fact, his testimony illustrates his inability to do so. Haw testified as follows:
      Q:        Do you perceive between the 4th and the 8th of June, 1992, that Mr. Saunders was
being directed by someone else as to how to handle his estate?
      A:        Well, I — there's no way I could perceive that. 
At one point, Haw testified that the actual existence of undue influence is almost impossible to
discern. 
      Furthermore, the summary judgment evidence shows that Decedent provided generously for
his children in the first two wills, with only a nominal bequest to Elizabeth. By the time of his
death, through changes in his wills, Decedent had made Elizabeth the principal beneficiary of the
bulk of his estate. The most substantial changes in Decedent's dispositions occurred in the June
12 will. There is evidence that on that date Elizabeth drove Decedent to Haw's office. Haw
testified that Decedent appeared weak and that he lay on the floor of his (Haw's) office for some
period of time over the course of the five and one-half hour conference because he was too weak
to sit. 
      The summary judgment evidence fails to conclusively negate any element of undue influence. 
Thus, the court erred when it granted the summary judgment on that claim. We sustain the
Contestants' points, reverse the summary judgment, and remand the cause for a trial on the merits. 

 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed August 23, 1995
Do not publish