

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00398-CV

ESTATE OF MARGARET FRYE, DECEASED

On Appeal from the County Court at Law No 2
Randall County, Texas
Trial Court No. 2010-297-P, Honorable Ronald Walker, Jr., Presiding

July 26, 2017

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Tara Frye Jackson and Blake Frye (Jackson and Frye) appeal from a summary judgment denying their application to set aside an order probating the will of Margaret Frye (Margaret), their grandmother. They initiated their effort to avoid the order, contending that the will resulted from undue influence exercised upon their grandmother Margaret by their two aunts, Judy Frye and Patsy Day. So too did they allege that Judy and Patsy tortiuously interfered with their inheritance rights and conspired to have them excluded from Margaret's will. Judy and Patsy moved for summary judgment which the trial court granted. We affirm as modified.

*Background*

As mentioned, Jackson and Frye were grandchildren of Margaret and the niece and nephew of Judy and Patsy. Judy and Patsy also had a brother, Gerald. The latter predeceased Margaret. And, though Margaret left bequests to Judy and Patsy in her will, she left nothing to Jackson and Frye despite her purported comments that she would.[1] This omission allegedly was due to the efforts of Judy and Patsy to induce Margaret to change her will when her husband Eugene died. Eugene was also the father of Judy and Patsy and grandfather of Jackson and Frye.

According to comments Patsy uttered to Jackson, the motive for excluding Jackson and Frye from inheriting from Margaret related to Eugene's alleged dislike for his daughter-in-law (*i.e.*, the mother of Jackson and Frye). Patsy would eventually tell her niece that they were excluded "[b]ecause Daddy did not like your mother, period . . . and that's what I want." So, "we cut ya'll out." In a taped phone conversation, Patsy told Jackson that Margaret's husband asked Margaret to make the change before he died.

*Standard of Review*

Judy and Patsy entitled their motion as a "No-Evidence Motion for Summary Judgment" and argued that no evidence supported the claims averred in the application of Jackson and Frye. Yet, they also proffered evidence to disprove the claims of their niece and nephew. Whether they intended to pursue a traditional or no-evidence motion is unclear. Furthermore, the particular avenue they intended to pursue affected

---

[1] We assume *arguendo* that Margaret's estate was left to Judy and Patsy for no one cited us to where in the appellate record her will could be found. Nor did our own perusal of the record uncover the document. The same is also true of Margaret's initial will that was allegedly supplanted by the will now under attack. We were unable to find it in the appellate record.

the burdens of all the parties. For instance, if they sought a no-evidence summary judgment, then the non-movants (*i.e.,* Jackson and Frye) had the burden to proffer evidence creating a material issue of fact regarding the elements at issue. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, __S.W.3d __, 2017 Tex. LEXIS 463, at *8-9 (Tex. May 19, 2017). If they were pursuing a traditional motion, then Judy and Patsy had the burden to illustrate that no material issues of fact existed and that they were entitled to a judgment as a matter of law. *Id.* at *9. Judy and Patsy proceeding as they did, then, we will treat the summary judgment motion as both a no-evidence and traditional one. Doing that requires us to first consider its no-evidence aspect. *Id.* at *8. And, in so considering that aspect, we conclude that summary judgment was warranted on the abbreviated record before us.

*Undue Influence*

The claim of undue influence contains several elements. They consist of 1) the existence and exertion of an influence upon the testator, 2) that subverted or overpowered his mind at the time the will was executed, and 3) so that the testator executed an instrument he would not otherwise have executed but for such influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963); *Truitt v. Byars*, No. 07-11-00348-CV, 2013 Tex. App. LEXIS 6705, at *24-25 (Tex. App.—Amarillo May 30, 2013, pet. denied) (mem. op.).

Next, an influence is not "undue" unless it destroys the testator's free agency resulting in the testament reflecting not the desires of the decedent but rather those of the person exerting the influence. *Truitt v. Byars*, 2013 Tex. App. LEXIS 6705, at *25. In other words, requesting or entreating another to execute a favorable dispositive

3

instrument fails to evince undue influence; rather, the entreaties must be so excessive as to subvert the will of the maker. *Rothermel v. Duncan*, 369 S.W.2d at 922. Thus, the influence exerted, if any, and the testator's state of mind when subjected to that influence bear on the question. *Id.* at 923 (stating that where evidence indicates the exercise of influence by another, "the issue as to whether it was effectually exercised necessarily turns the inquiry and directs it to the state of the testator's mind at the time of the execution of the testament, since the question as to whether free agency is overcome by its very nature comprehends such an investigation"). Indeed, we have said that "a will contestant must not only provide evidence that an undue influence existed, they must also offer evidence of the testatrix's state of mind at the time the will was executed that would tend to show her free agency was overcome by such influence." *Truitt v. Byars*, 2013 Tex. App. LEXIS 6705, at *25.

One other circumstance demands consideration as well. It is the legal truism that a person of sound mind has the right to dispose of his property as he wishes. *Rothermel v. Duncan*, 369 S.W.2d at 923-24. One may be old, may be suffering from maladies, may be susceptible to influence, and may select an unordinary way to dispose of his property, but the disposition may still be emanating from her own will or choice. *See id.* (where the Supreme Court struck down the finding of undue influence despite evidence of the testatrix loving both of her grandchildren, informing others of her desire to leave property to her grandchildren, suffering from maladies associated with age, being susceptible to influence and, ultimately, executing a will denying her grandchildren any property from her estate).

4

Simply put, the evidence of record fails to create a genuine issue of fact establishing the exertion of any influence on the part of Judy or Patsy with regard to the identity of those who were to be beneficiaries of Margaret's estate. There is evidence that Judy and Patsy may have informed their mother of her need to change the will. So too is there evidence that Judy and or Patsy may have taken their mother to a lawyer's office within three weeks of Eugene's death. Frye stated in his deposition that Judy and Patsy informed Margaret that this was needed because the person designated as executor of her will (her son Gerald) had died and that they wanted to be co-executors. Yet, we are cited to nothing indicating what transpired in the lawyer's office. Nor were we cited to evidence indicating that either Judy or Patsy was present when Margaret spoke with the lawyer or what the lawyer and Margaret discussed. It is clear that neither Judy nor Patsy were present when Margaret executed the new will.

We acknowledge the presence of evidence indicating that Eugene supposedly asked Margaret before he died to change her will and leave her property to Judy and Patsy. Jackson and Frye question the veracity of that evidence. Nevertheless, we were cited to and found no evidence indicating that either Judy or Patsy broached that matter with Margaret or the lawyer before the new will was signed.

It may be that Patsy informed Jackson, years after the will's execution, that "we cut ya'll out" because Eugene did not like Jackson's mother. Yet, "we cut ya'll out" indicates a result. It illustrates neither the presence of any communications on the matter between Judy, Patsy, and Margaret or their tenor. And though the result may have been agreeable to Judy and Patsy, there is no evidence that they asked, told, or demanded that from Margaret.

5

At most, the evidence indicates opportunity to influence. Opportunity alone, though, is not enough to establish undue influence. *In re Estate of Bivins*, No. 07-01-00131-CV, 2002 Tex. App. LEXIS 4924, at *12 (Tex. App.—Amarillo July 10, 2002, no pet.) (not designated for publication); *Estate of Davis*, 920 S.W.2d 463, 466 (Tex. App.—Amarillo 1996, writ denied). Nor is it enough to create genuine issues of material fact on the matter.

*Issue Two – Tortious Interference with Inheritance Rights*

Jackson and Frye next argued that the State of Texas has recognized the claim of tortious interference with inheritance rights. As we discussed in *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1 (Tex. App.—Amarillo 2015), *aff'd*, 2017 Tex. LEXIS 477 (Tex. May 26, 2017), this court does not recognize the cause of action for tortious interference with inheritance rights. That decision underwent review by our Supreme Court in *Kinsel v. Lindsey*, No. 15-0403, 2017 Tex. LEXIS 477 (Tex. May 26, 2017). It agreed that the cause of action has yet to be recognized in Texas. Until either the Supreme Court or the legislature recognizes it, we will not for the reasons expressed in our *Kinsel* opinion. Thus, the trial court did not err in granting summary judgment against them on that claim.

Accordingly, we overrule the issues of Jackson and Frye. Before affirming the judgment, though, we modify it. The document purports to adjudicate the rights of "Jamie Frye Morris." The latter person was not a party to the action. Nor did the summary judgment motion encompass any claims that individual may have had against Margaret, her estate, her will, Judy, or Patsy. Thus, the trial court had no jurisdiction to adjudicate the rights of "Jamie Frye Morris." Because we have the authority to enter the

judgment which the trial court should have entered, *Jordan-Nolan v. Nolan*, No. 07-12-00431-CV, 2014 Tex. App. LEXIS 8159, at *9 (Tex. App.—Amarillo July 28, 2014, no pet.) (mem. op.), we remove reference to "Jamie Frye Morris" from the trial court's judgment, and affirm it as modified.

Brian Quinn
Chief Justice