# NO. 12-18-00079-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE ESTATE OF* | *§* | *APPEAL FROM THE* |
| *PATRICIA J. RUSSEY,* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *DECEASED* | *§* | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Veronica J. Phillips, as independent executrix of the estate of Patricia J. Russey, and Sherrill Watson, as the estate's sole devisee, appeal the trial court's order denying admission of Russey's will to probate and granting the application for independent administration to Russey's daughter, Katreena Dale Stevens. In one issue, Phillips and Watson contend that the evidence is neither legally nor factually sufficient to support the trial court's conclusions of law that Watson exerted undue influence over Russey when she signed the will. We affirm.

## BACKGROUND

Russey died at her home in Tool, Texas, on April 13, 2017. She was sixty-three years old. At the time of her death, Russey had been married to her husband Louis, for forty-six years. She and Louis have two adult children, Patrick Russey and Katreena Stevens.

Nearly two years prior to her death, Russey filed for divorce. The divorce proceedings were hampered by Russey's poor health, which consisted of congestive heart failure, pneumonia, back issues, and other physical ailments. Her health continued to deteriorate, and she was hospitalized for two weeks in February 2017, and for another week in March 2017. The divorce proceedings were pending still at the time of her death.

When she initiated divorce proceedings, Russey's sister, Belinda, was her closest friend and adviser. But sometime after the divorce proceedings ensued, Belinda passed away. Stevens testified that she and Russey's relationship was strained during this time because Stevens accused

Russey of taking property that belonged to Louis. Stevens testified that prior to this time, she took her mother to her medical appointments and procedures. She further testified that Russey became lonely after Belinda died and that, during this time, Watson "swooped in," befriended Russey, and began taking her to her medical appointments and to the hospital. Further, Phillips, Russey's divorce attorney, testified that Watson attended Russey's meetings with Phillips and, in January 2017, even attended with Russey the mediation related to the divorce proceedings.

Stevens further stated that Lisa Beatty, an employee of the auction company owned by Watson's husband and daughter, moved into Russey's garage apartment during the pendency of the divorce proceedings. In one of its findings of fact, the trial court set forth that Watson and Beatty "misled" Russey during her illness and "caused conflict" between Russey and Stevens.

On March 1, 2017, while either Beatty or Watson was driving her home from the hospital, Russey stopped at Phillips's office to discuss the preparation of a will; Russey had no prior existing will. Later that evening, Phillips received a text message, which originated from Russey's phone, requesting that she prepare a will naming Watson her sole devisee. Russey previously told Phillips that she wanted Watson to serve as her Independent Executrix. Instead, without consulting Russey, Phillips drafted the will and listed herself as independent executrix.[1] Phillips then emailed the one-page will to Russey.

The next day, Watson printed the emailed will from a computer at Russey's house. Watson and her husband attended the will's signing along with two of Russey's neighbors, who served as witnesses. During the will's execution, Watson handwrote the date on the will. Later, someone other than Russey returned the executed will to Phillips.[2] Russey died on April 13, 2017.

Phillips filed an application to probate Russey's will and for issuance of letters testamentary. Stevens filed a competing application for independent administration and for letters of administration under Section 4.01.003 of the Texas Estates Code. Following a bench trial, the trial court entered its order denying the admission of the will to probate and granting Stevens's application for independent administration. The court further entered findings of fact and conclusions of law. Several of the trial court's conclusions can be summarized as follows: Watson

---

[1] The record reflects that Phillips decided that because Watson was under a deferred adjudication order in Collin County, Texas, for theft of $38,721.96 from the Wiley Northeast Special Utility District, she should not be named the independent executrix.

[2] Phillips believed the person who delivered the will was either Watson or Beatty.

unduly influenced Russey, which resulted in the March 2, 2017, will, which would not have been otherwise executed but for that undue influence.  This appeal followed.

## UNDUE INFLUENCE

In their sole issue, Phillips and Watson contend that there is neither legally nor factually sufficient evidence to prove that Watson exerted undue influence over Russey in the making of her will of March 2, 2017.

### Standard of Review

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal sufficiency of the evidence used to support them just as we would review a jury's findings.  *See City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.–Houston [1st Dist.] 2008, pet. denied).  In conducting a legal sufficiency review of the evidence, we must consider all the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding, if a reasonable factfinder could consider it, and disregard evidence contrary to the finding, unless a reasonable factfinder could not disregard it.  *Id.* at 827; *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.–Houston [1st Dist.] 2007, no pet.).  If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, the factfinder must be allowed to do so.  *City of Keller*, 168 S.W.3d at 822; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).  We will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following:  (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.  *City of Keller*, 168 S.W.3d at 810.

More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded jurors to differ in their conclusions.  *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).  Any ultimate fact may be proved by circumstantial evidence.  *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993).  A fact is established by circumstantial evidence when it fairly

3

and reasonably may be inferred from other facts proved in the case. *See id.* Evidence that is so slight as to make any inference a guess is, in legal effect, no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Moreover, under the equal inference rule, a factfinder may not infer reasonably an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another. *See Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013).

When considering a factual sufficiency challenge, courts of appeals must consider and weigh all the evidence, not just that evidence which supports the verdict. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998); *Thompson v. Houk*, No. 12-04-00315-CV, 2005 WL 2035831, at *2 (Tex. App.–Tyler Aug. 24, 2005, no pet.) (mem. op.). We may set aside the verdict only if it is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

The trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing *City of Keller,* 168 S.W.3d at 819). It is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Canal Ins. Co*., 238 S.W.3d at 557. Accordingly, reviewing courts must assume that the factfinder decided all credibility questions in favor of the verdict if a reasonable person could do so. *Id*. If a reasonable finder of fact could have done so, we must assume that the factfinder chose what testimony to disregard in a way that was in favor of the verdict. *Id*.

**Applicable Law**

Undue influence implies the existence of a testamentary capacity subjected to and controlled by a dominant influence or power. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). To establish undue influence, a contestant must show the following: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. *Id*. Influence is not undue unless the free agency of the testator was destroyed, and a testament produced that expresses the will of the one exerting the influence. *Id*.

In *Rothermel*, the Texas Supreme Court set forth the following nonexhaustive ten-factor list to consider in assessing whether undue influence exists:

4

(1) the nature and type of relationship existing between the testator, the contestants, and the party accused of exerting such influence;

(2) the opportunities existing for the exertion of the type or deception possessed or employed;

(3) the circumstances surrounding the drafting and execution of the testament;

(4) the existence of a fraudulent motive;

(5) whether there had been a habitual subjection of the testator to the control of another;

(6) the state of the testator's mind at the time of the execution of the testament;

(7) the testator's mental or physical incapacity to resist or the susceptibility of the testator's mind to the type and extent of the influence exerted;

(8) words and acts of the testator;

(9) weakness of mind and body of the testator, whether produced by infirmities of age or by disease or otherwise; and

(10) whether the testament executed is unnatural in its terms of disposition of property.

See *Rothermel*, 369 S.W.2d at 923; *see also In the Matter of KAM*, 484 S.W.3d 642, 652 (Tex. App.–El Paso 2016, no pet.). The first five factors address the first element of undue influence, i.e., whether such influence existed and was exerted with respect to the testament at issue. *See KAM*, 484 S.W.3d at 652. The next four factors concern the second element, i.e., whether the undue influence subverted or overpowered the testator's will. *See id.* at 653. The tenth factor is relevant only to the third element, i.e., whether the testament would have been executed but for such influence. *Id*.

No two suits alleging undue influence are the same. *Rothermel*, 369 S.W.2d at 921. The outcome of each case depends on its own unique facts. *See In re Estate of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *14 (Tex. App.–Fort Worth Nov. 15, 2018, no pet.) (mem. op.). Undue influence may be shown by direct or circumstantial evidence but usually will be established by the latter. *See Rothermel*, 369 S.W.2d at 922. All of the circumstances shown or established by the evidence should be considered. *See In Re Estate of Johnson*, 340 S.W.3d 769, 777 (Tex. App.–San Antonio 2011, pet. denied) (citing *Rothermel*, 369 S.W.2d at 922). Even where none of many circumstances alone would be sufficient to prove undue influence, if, when considered together, they produce a reasonable belief that an influence was exerted that subverted

5

or overpowered the testator's mind and resulted in the execution of the testament in controversy, the evidence is sufficient to sustain such a conclusion. *See Johnson*, 340 S.W.3d at 777 (citing *Rothermel*, 369 S.W.2d at 922). Circumstantial evidence must do more than raise suspicion. *Luce*, 2018 WL 5993577, at *14. The distinction between evidence that suffices to show undue influence and that which merely is suspicious defies articulation; it essentially is a matter of degree. *Id*. (citing *Boyer v. Pool*, 154 Tex. 586, 280 S.W.2d 564, 566 (1955)).

## Existence and Exertion of an Influence

We first consider whether there is sufficient evidence that Watson had a fraudulent motive in having Russey sign a will in which Watson was designated as her sole devisee. We initially note that there is evidence that in August 2011, Watson was subject to an order of deferred adjudication for theft of $55,471.20 from the Wiley Northeast Special Utility District. Pursuant to the order, she was required to pay restitution in the amount of $38,721.96 to the utility district. Since the original deferred adjudication order, two motions to proceed to final adjudication of guilt were filed alleging she failed to pay court ordered restitution, the most recent of which was in 2016. However, the 416th Judicial District Court in Collin County, Texas, did not proceed to final adjudication and, rather, extended her deferred adjudication period. At the time Russey signed the will, her estate was worth more than the $28,000 Watson still owed in restitution to the utility district. This monetary need on Watson's part amounts to some circumstantial evidence underlying her motive to seek to influence Russey to name her as her sole devisee of her will.

We next consider the nature and type of relationship that existed between Russey, Watson, and Stevens. Russey formerly worked for an auction business owned by Watson, her husband, and her daughter. She worked there for several years. But around 2015, Watson accused Russey of stealing from the business. Watson disputes the trial court's finding of fact that she was Russey's employer and she fired her following allegations of theft. In her trial testimony, Watson stated that the auction company was owned only by her husband and daughter. On the other hand, Stevens testified that Watson herself fired Russey after she confronted Russey about stealing from the company. Stevens further testified that Russey was terribly upset as a result of her firing and was unable to get out of bed for weeks thereafter. Despite this conflicting testimony, however, we are mindful that the trial court was entitled to afford greater credibility to Stevens's testimony than it did to Watson's. *See Canal Ins. Co*., 238 S.W.3d at 557–58.

6

Stevens also testified that Watson "swooped in" after Belinda died, which coincided with Stevens and Russey's being at odds over Stevens's accusations that Russey was taking property that belonged to Louis. Stevens testified that she previously had been the person who took Russey to all of her medical appointments. But after Belinda's death, Watson or Beatty accompanied Russey to her medical appointments or to the hospital. Watson does not contest the trial court's finding that Russey was dependent on her during her last illness for much of her care and transportation. But she does dispute the trial court's finding that she and Beatty misled Russey during this time of illness and caused conflict between Russey and Stevens. *See id.*

Moreover, Stevens testified that Beatty continuously harassed her and her children during Russey's final illness. Specifically, according to Stevens, Beatty routinely made obscene gestures to Stevens and her children whenever they came into contact with her and honked her car horn at the children when they walked to and from the school bus stop. Stevens stated that Watson "froze her out," thereby preventing her from being able to reestablish any type of relationship with Russey. *See, e.g.*, **Johnson**, 340 S.W.3d at 782–83 (jury could consider witness's reinterpretation of historical events in negative manner and negative remarks about person's children as evidence of undue influence).[3]

Finally, we consider whether the circumstances surrounding the drafting and execution of the March 2, 2017, will indicated any undue influence on Watson's part. Watson does not dispute that she and her husband, Terry, were present when Russey executed the will in her home. The trial court found that Watson printed the will from Russey's computer and presented it to Russey to sign. The trial court further found that Watson inscribed the date on the will. Watson testified that she did not know that it was a will when she printed the document. She further testified that she was unaware she was designated as the sole devisee of Russey's estate until after Russey's death. Watson also contests the trial court's finding that Russey was not the person who returned the will to Phillips's law office. Instead, she contends that it is not known who returned the will to Phillips. However, Phillips testified that she believed the person who returned the will to either

---

[3] In **Johnson**, an expert witness ascribed the name "relationship poisoning" to this sort of manipulative and/or negative behavior. *See id.* at 782. In this case, the term "relationship poisoning" was not used, and no expert testimony was offered on the subject. Nonetheless, we conclude that the trial court could consider testimony regarding Watson's actions as evidence of undue influence without the necessity of expert testimony to categorize such actions under such a moniker.

7

be Watson or Beatty. But we remain mindful that the trial court was entitled to disregard this testimony as not credible. *See Canal Ins. Co*., 238 S.W.3d at 557–58.

Based on our review the record, we conclude that the evidence is legally and factually sufficient to support the trial court's findings that an influence existed and was exerted by Watson. *See City of Keller*, 168 S.W.3d at 810; *Jones*, 917 S.W.2d at 772.

**Overpowering Russey's Mind**

Where there is competent evidence of the existence and exercise of undue influence, the issue of whether that undue influence effectively was exercised necessitates the consideration of the state of the testator's mind at the time of the execution of the testament. *See Rothermel*, 369 S.W.2d at 923. The establishment of the subversion or overpowering of the will of the testator generally is based upon an inquiry as to the testator's mental or physical incapacity to resist the susceptibility of her mind to the type and extent of the influence exerted. *See id*. Weakness of mind and body, whether produced by infirmities of age, by disease, or otherwise, may be considered as a material circumstance in establishing this element of undue influence. *Id*.

We first consider Russey's mental and physical capacity to resist and her susceptibility to the type and extent of the influences exerted. The trial court found that, due to her health problems, Russey was reliant on others for transportation. Further, the trial court found that Watson befriended Russey while she was suffering from these health problems and that Russey became dependent on Watson during her last illness for much of her care and transportation. Stevens testified that Russey was lonely, particularly after Belinda's death. She also testified that Watson "swooped in" to provide assistance to Russey with her health issues and became deeply involved in her divorce proceedings. We conclude that this evidence is sufficient to establish that Russey was incapable of resisting her susceptibility to Watson's influence over her making and signing of her will.

Further, in considering Russey's state of mind at the time she executed her will, we note that Watson and Beatty actively sought to continue Russey's estrangement from Stevens and her grandchildren. The record also reflects that Watson and her husband made certain they were present when Russey signed the will, in which Watson was designated as her sole devisee; no family members were present or were invited to attend the signing of the will.

We reiterate that the factfinder may choose to believe one witness and not another and determines the weight to be given to the evidence. *See City of Keller*, 168 S.W.3d at 819.

8

Considering the cumulative effect of the evidence related to (1) Russey's susceptibility and dependence on Watson at the end of her life, (2) the details surrounding the signing of the March 2, 2017, will, and (3) Watson's successfully keeping Stevens and her children away from Russey during this time, we conclude that a factfinder reasonably could determine that Watson exerted her influence and subverted and overpowered Russey's mind at the time she signed the will. Therefore, we further conclude that the evidence is legally and factually sufficient to establish the second element of undue influence. *See City of Keller*, 168 S.W.3d at 810; *Jones*, 917 S.W.2d at 772.

## No Execution Without Influence

Lastly, we consider whether Russey would not have executed the instrument, but for Watson's influence. *See Rothermel*, 369 S.W.2d at 923. Satisfaction of this element usually is predicated on whether the disposition of property is unnatural. *See id.*

The philosophy of law allows untrammeled range for natural affection. *Craycroft v. Crawford*, 285 S.W. 275, 278 (Tex. Comm'n App. 1926, holding approved; judgm't adopted). One of the main objects of the acquisition of property by the parent is to give it to his child; and that child in turn will give it to his, in this way the debt of gratitude we owe to our parent is paid to our children. *Id*. Thereby, each generation pays what it owes to the preceding one by payment to the succeeding one. *Id*. This seems to be the natural law for the transmission of property. *Id*. Any departure from that course, though it may not be uncommon or unusual, is unnatural. *See Morse v. Morse*, 279 S.W. 806, 807 (Tex. Comm'n App. 1926, holding approved).

In the instant case, the trial court found that the distribution under Russey's will was unnatural. Watson contests this finding, arguing that the evidence demonstrates that Russey established a close relationship with Watson after Watson was rejected by her family. But the record also demonstrates that Russey never made a will until Watson reentered her life during her last illness. Because the evidence of record supports that Watson unduly influenced Russey into the making and signing of her will during a period of physical and emotional weakness when she never had before sought to create such a document, we conclude that the trial court reasonably could have determined that Russey's March 2, 2017, will was unnatural in that it passed all of her property to Watson with no apparent consideration given to her children or grandchildren.

In sum, we have considered the entirety of the evidence along with the relevant factors. Having done so, we conclude that the trial court reasonably could have determined that Watson

9

exercised undue influence over Russey in the execution of her March 2, 2017, will. *See City of Keller*, 168 S.W.3d at 810. Moreover, our review has not caused us to conclude either that the evidence is so weak or the trial court's findings at issue are so against the great weight and preponderance of the evidence that the judgment clearly is wrong and unjust. *See Francis*, 46 S.W.3d at 242. Therefore, we hold that there is both legally and factually sufficient evidence to support the trial court's judgment. *See City of Keller*, 168 S.W.3d at 810; *Jones*, 917 S.W.2d at 772; *see also Rothermel*, 369 S.W.2d at 923; *KAM*, 484 S.W.3d at 652. Phillips and Watson's sole issue is overruled.

## DISPOSITION

Having overruled Phillips and Watson's sole issue, we *affirm* the trial court's judgment.


JAMES T. WORTHEN
Chief Justice



Opinion delivered February 28, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(PUBLISH)


10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2019**

**NO. 12-18-00079-CV**

**IN THE ESTATE OF PATRICIA J. RUSSEY, DECEASED**

Appeal from the County Court at Law No. 2
of Henderson County, Texas (Tr.Ct.No. 102-2017CCL2)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **SHERRILL WATSON** and **VERONICA J. PHILLIPS**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*