

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00339-CV

---

IN THE ESTATE OF HALINA DAROCHA, DECEASED

---

On Appeal from the County Court at Law No. 1
Potter County, Texas
Trial Court No. CCPR-24-262-1, Honorable Walton Weaver, Presiding

---

May 6, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Herlinda Berryman, appeals from the trial court's order granting Appellee, Salomon Torres's, no-evidence motion for summary judgment. Through one issue, she contends testimony from long-time friends and acquaintances of Halina DaRocha created a reasonable fact question precluding the grant of the no-evidence summary judgment. We affirm.

**BACKGROUND**

This appeal involves a will contest. In December 2021, DaRocha executed a will that left her estate in equal shares to (1) Herlinda C. Berryman and (2) Watch Tower Bible

and Tract Society of New York, Inc. In February 2024, DaRocha executed another will, revoking her previous will and leaving her estate to Salomon Benjamin Torres and Vianca Cristina Vidal Aguirre in equal shares. DaRocha died in November 2024.

Both wills were submitted to probate and Berryman argued the February 2024 will was the product of undue influence. The trial court appointed Torres as the temporary administrator of the estate. Torres later filed a no-evidence motion for summary judgment. Berryman filed a response that included affidavits from four people in support thereof. The trial court held a hearing on the no-evidence motion for summary judgment in July 2025, after which it granted the motion.

## ANALYSIS

Through a single issue, Berryman argues the testimony from long-time friends and acquaintances regarding DaRocha's cognitive and emotional decline, suggestibility, and apparent use of fear and apprehension of demons created a reasonable fact question precluding the grant of the no-evidence summary judgment. We overrule the issue.

Standard of Review and Applicable Law

A no-evidence summary judgment is "essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing such a summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Therefore, in considering a no-evidence motion for summary judgment, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* at 751. A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court

2

is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* Accordingly, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id. See also In re Estate of Grimm*, 180 S.W.3d 602, 607 (Tex. App.—Eastland 2005, no pet.).

Rule 166a(i) requires the trial court to grant a no-evidence motion for summary judgment unless the respondent, in this case Berryman as the contestant of the February 2024 will, produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

A "solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing." *Rothermel v. Duncan*, 369 S.W.2d 917, 922–23 (Tex. 1963). Rather, the circumstances relied on as establishing the elements of undue influence must be of a "reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence." *Id.* at 922.

Undue influence implies the existence of testamentary capacity but occurs when there is evidence showing the testator is subject to and controlled by a dominant influence

3

or power. *In re Estate of Spiller*, No. 04-22-00050-CV, 2023 Tex. App. LEXIS 2129, at *15 (Tex. App.—San Antonio Mar. 31, 2003, no pet.) (mem. op.) (citing *Rothermel*, 369 S.W.2d at 922). The burden of proving undue influence is "upon the party contesting [a will's] execution." *In re Estate of Spiller*, 2023 Tex. App. LEXIS 2129, at *15. "To show undue influence, a contestant must prove: (1) the existence and exertion of an influence (2) that subverted or overpowered the testator's mind when she executed the will, (3) such that she executed a will that she would not have otherwise executed but for the influence." *Id.*

Application

At the heart of her claim of undue influence is Berryman's theory that Torres used DaRocha's fear of demons to isolate her from her friends and other social contacts and to unduly influence her to execute the February 2024 will that changed the beneficiaries from those set forth in the December 2021 will.

As support for her claims, Berryman points to her testimony that she enjoyed a 40+ year friendship with DaRocha, beginning in 1978. She began helping DaRocha with daily tasks in 2010, when it became evident DaRocha was struggling.[1] In contrast, the Torres family met DaRocha through church in January 2024 and very quickly moved into her home. When they did so, they apparently helped her with daily tasks, prepared food for her, and took her to church and to meetings. The will revoking the 2021 will was executed the next month, in February 2024. DaRocha was 85 years old at that time.

---

[1] DaRocha's husband died in 2004. In 2010, DaRocha began throwing away bills and having trouble with daily tasks.

4

Berryman contends Torres used DaRocha's fear of demons to isolate her from friends. She notes that after the Torreses entered her life, DaRocha would call her friends "demons." And, Berryman asserts, DaRocha exhibited mental decline, as shown through, among other things, (1) her claims that demons visited her, (2) her breaking her television with a hammer because she believed demons were coming through the screen to inject her with medication in her legs and eyes, and (3) her staying awake yelling at demons. Berryman supports her claims through the affidavits of herself, Natalie Piper, Lucy Sotille, and Erika Tate.[2]

Berryman also states DaRocha previously made regular charitable contributions to the Kingdom Hall religious organization and she executed a 2021 will leaving half of her estate to Watch Tower Bible and Tract Society. Conversely, the February 2024 will excluded religious organizations completely, transferring property to Torres and Aguirre instead. This, Berryman said, was in complete contrast to what she knew of DaRocha over the course of many decades. Statements in the other affidavits support Berryman's belief that DaRocha desired some of her estate go to the religious organization of her choice.

Torres responds, first asserting hearsay and inconsistent evidence undermined the credibility of the affidavits Berryman relies on as evidence supporting the elements of undue influence. While undue influence may be established by circumstantial evidence, such "may be done provided the circumstances are strong and convincing enough and of such probative force to lead a well-guarded mind to a reasonable conclusion that such

---

[2] These women were DaRocha's friends. Tate is also Berryman's daughter.

influence was exercised by the alleged party and that it controlled the will power of the testator at the very time the will was executed." *Black v. Black*, 240 S.W.2d 458, 466 (Tex. App.—Amarillo 1951, writ ref'd n.r.e.). The statements in the affidavits are largely conclusory, are hearsay not subject to any relevant exception,[3] and vague as to the time in which various incidents occurred and observations were made. This is not competent evidence that will defeat a no-evidence motion for summary judgment. *In re Estate of Grimm*, 180 S.W.3d at 607–08.

Next, Torres addresses his move into the home to help DaRocha shortly before she executed the February 2024 will. He contends this does not establish he exerted undue influence over her. *See In re Estate of Price*, No. 04-05-00438-CV, 2006 Tex. App. LEXIS 11043, at *10–11 (Tex. App.—San Antonio Dec. 20, 2006, pet. denied) (mem. op.). A will cannot be set aside based on an allegation of facts which, "at most, show that one had the opportunity to exercise influence." *Id.* at *10 (citing *Burgess v. Sylvester*, 177 S.W.2d 271, 275 (Tex. App.—Amarillo 1944), *aff'd*, 182 S.W.2d 358 (1944)). The record shows the Torreses lived with DaRocha for a period of a few months during which the 2024 will was executed. However, this simply provided the Torreses an opportunity in which to influence DaRocha.

Torres also argues none of the affidavits make an assertion of undue influence at the time of will execution. He contends there is no competent evidence supporting any of the undue influence elements, but in particular, nothing to show such undue influence occurred at the time the February 2024 will was executed. Indeed, it is well-documented

---

[3] *See* TEX. R. EVID. 801 (setting forth definition of hearsay and exclusions).

that DaRocha's fear of demons existed well before, and apparently after, the execution of the 2024 will. In fact, that belief existed at the time she executed the 2021 will that Berryman promotes as the will that should control.

Further, there was no evidence of causation nor was there any expert or medical testimony to support Berryman's claims that DaRocha suffered mental impairment. "[A] weakened physical or mental state 'is only indicative of . . . susceptibility to influence; it is no evidence that such influence exists in fact.'" *In re Estate of Kim*, 484 S.W.3d 642, 653 (Tex. App.—El Paso 2016, pet. denied). Therefore, Torres posits, proof of DaRocha's belief in demons does not prove exertion of undue influence at the time she executed the February 2024 will. No evidence shows who arranged the will execution, what instructions were given, or the circumstances of signing.

Moreover, Torres notes, prior testamentary intent is not definitive because testators are entitled to change their minds. *In re Estate of Price*, 2006 Tex. App. LEXIS 11043, at *10. It is undisputed DaRocha routinely made monetary contributions to her church and the 2021 will divided her estate between Berryman and the Watch Tower Bible and Tract Society of New York, Inc. But the simple fact that the 2024 will divided her property differently does not prove undue influence. *Id.* ("[a] change in the testator's mind regarding the disposition of property is not indicative of undue influence"). Rather, "[i]nfluence is not undue unless the free agency of the testator was destroyed and a testament produced that expresses the will of the one exerting the influence." *Id.* at *9. Nothing in the affidavits raises more than a scintilla of evidence that DaRocha's free agency was destroyed such that the 2024 will expressed the will of the Torreses rather than her own. We note also the record indicates the Torreses moved out of DaRocha's

7

home sometime in March 2024.  DaRocha did not pass until November 2024, some six months later, during which she could have executed a new will free of any impact the Torreses might have had on her.  She did not do so.

Torres also contends there is no proof he isolated DaRocha to her detriment such that he was able to unduly influence her to execute the 2024 will.  Berryman highlights evidence that Torres spoke Spanish in an effort to deceive those around him, including DaRocha, and that his family kept DaRocha away from her friends.  Berryman points to instances in which Torres took DaRocha to church or to meetings but ushered her out before anyone could speak with her.  He later stopped taking DaRocha to meetings at all but DaRocha continued coming to church.  Berryman also notes instances in which it appeared DaRocha was made to say her friends were demons and to tell them to leave her home, something Berryman said had not occurred before the Torreses moved in. And, she notes DaRocha's demeanor toward her friends was different when the Torreses were not present.  This is not evidence of isolation to such a degree that DaRocha's will was overborne by Torres.

The evidence does seem to show DaRocha might have experienced some cognitive decline as evidenced by her long-standing belief in demons, deficits in memory, confusion concerning the execution of daily tasks, and incidents related thereto. However, there is nothing in the affidavits or other evidence presented by Berryman raising a fact issue on the existence of an undue influence that overpowered DaRocha when she signed the February 2024 will.  There is nothing showing that but for the Torreses' influence, DaRocha would not have executed the February 2024 will. Therefore, because Berryman's evidence was insufficient to raise a fact issue concerning

8

undue influence, summary judgment was proper and the trial court did not err in granting Torres's no-evidence motion for summary judgment.

## CONCLUSION

Having overruled Berryman's sole issue, we affirm the judgment of the trial court.

Alex Yarbrough
Justice