**Opinion filed November 2, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00035-CV

_____

## IN THE MATTER OF THE ESTATE OF ROBBIE CHRIS BRISTOW, DECEASED

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 025056**

### M E M O R A N D U M   O P I N I O N

Robbie Chris Bristow (Decedent) executed two different wills in the year prior to his death. Appellant, Rebecca Bristow, is Decedent's wife. Appellant filed this appeal challenging probate of the latter will per the trial court's Order Probating Will and Authorizing Letters Testamentary. The will was submitted for probate following Decedent's death and Appellant contested the probate, claiming, as she does on appeal, that the will was invalid because (1) Decedent lacked testamentary capacity, and (2) Decedent was unduly influenced at the time the will was made. Appellant additionally claims on appeal that the trial court erred in its determination

of proper venue and in finding that the will was valid.  We affirm the order of the trial court.

## Factual and Procedural History

Decedent's first of two wills was signed on December 13, 2019, (December Will) and the second was signed on May 27, 2020 (May Will).  The May Will was submitted for probate in August 2020.  At the time of the drafting/signing of the May Will, Decedent was in the midst of a divorce proceeding with Appellant.  But a final divorce decree was not signed prior to Decedent's death.  During their approximately 13-year marriage, Decedent and Appellant had a son, L.B.  L.B. was born into the marriage and was legally Decedent's son.[1]  Decedent had two other children: a son— who was disinherited in both wills and is not part of this lawsuit—and a daughter, Tisha Westbrook, the Appellee in this case.[2]

After Appellant filed for divorce in January 2020, Decedent was moved to Tisha's home to live with her.  Decedent suffered from liver disease, diabetes, and— sometime prior to the relevant events in the case—had a lower-leg amputation.  There was testimony that Decedent was dependent upon others for transportation and other necessities related to his care.  At the time Decedent executed the May Will, his attorney had no concerns about his mental capacities.  Tisha, with whom Decedent continued to live until his death, similarly testified that she had no concerns about his mental capacity on the day he signed the May Will.

Decedent died on August 5, 2020, and his May Will was submitted for probate two days later.  Appellant filed a will contest one week later.  In October 2021, there

---

[1]There was a paternity question raised in the counterpetition for divorce, but no DNA test was done prior to his second will and Decedent's death.

[2]Tisha is an adult and was adopted by her paternal grandparents at some point, making her Decedent's biological daughter, but also legally his sister.  She is referred to as his sister in the May Will. Tisha testified that she always referred to Decedent as "dad."  We refer to her as the Decedent's daughter in this opinion.

2

was a final hearing on the will contest. Three witnesses testified. Two for the applicant: Decedent's attorney and Decedent's daughter Tisha; and one for the contestant: Appellant, Decedent's wife. Following the hearing, the trial court ordered the May Will probated.

Appellant raises one issue for review on appeal: Decedent's will should not have been admitted into probate. Appellant claims that four arguments support her sole issue. First, Decedent was unduly influenced; second, Decedent lacked testamentary capacity; third, evidence was improperly excluded by the trial court; and fourth, venue was improper. We first address the fourth argument regarding venue, then the first and second arguments that relate to the validity of the will, then the third argument as to evidence excluded by the trial court.

*The Motion to Transfer Venue was not timely filed.*

Appellant argues that the proceedings should have been transferred from Jones County to Taylor County. Although Decedent lived with Tisha in Jones County in the months before he died, Appellant argues that he was still a resident of Taylor County at the time of his death. Under Section 33.001(a) of the Texas Estates Code, if the decedent had a domicile or fixed place of residence, venue for probate proceedings is in the county where the decedent resided. *See* TEX. EST. CODE ANN. § 33.001(a)(1) (West 2020). If the decedent did not have a domicile or fixed place of residence, venue for probate proceedings is in the county where the decedent's principal estate was located at the time of death or the county where the decedent died. *See id.* § 33.001(a)(2)(A). Appellant argued in the motion to transfer venue that Decedent's residence was in Taylor County at the time of his death and that filing for probate in Jones County was improper. The probated will similarly states that Decedent was a resident of Taylor County at the time it was created/signed on May 27, 2020. Tisha argues that Appellant failed to file the motion to transfer venue in a timely manner.

We agree that the motion to transfer venue was untimely. A motion to transfer venue was filed approximately five months after the application to probate the will was filed. Appellant filed a "Contest of a Will" on August 14, 2020. The motion to transfer venue was filed on January 4, 2021—and denied by the trial court on March 17, 2021.

Rule 86 of the Texas Rules of Civil Procedure requires that a motion to transfer for venue purposes is waived if it is made after any written motion is filed (other than a special appearance)—this includes the original answer. *See* TEX. R. CIV. P. 86(1). Appellant attempts to distinguish filings in the county court versus the district court, claiming that the motion to transfer venue was the first *substantive* motion filed after the case was transferred to the district court.[3] This argument is unpersuasive. The venue rule makes no distinction between county and district courts when a case is transferred from one to the other. *See* TEX. R. CIV. P. 86. Therefore, when Appellant filed the will contest in the county court, that was the first written motion filed in the case. The case did not become a new case once it was transferred to the district court—it was simply a continuation of the case that was originally filed in county court.

The record shows that Appellant did not file the motion to transfer venue concurrently or before she completed her first filing. Because the will contest was filed long before the motion to transfer venue was filed, Appellant failed to comply with the requirements of Rule 86 and as a result, has waived any venue complaint. *See Estate of Neuman*, No. 09-13-00570-CV, 2015 WL 2255563, at *2 (Tex. App.—Beaumont May 14, 2015, no pet.) (mem. op.) (where the motion to transfer venue was untimely, the appellate court held the movant waived his claim that the decedent's domicile changed before his death); *see also Jarvis v. Field*, 327 S.W.3d

---

[3]A motion to substitute counsel was filed prior to the motion to transfer venue and after the case was transferred to the district court.

918, 925 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (where venue claims were waived when no written objection on improper venue grounds was made to the county court—but was first raised on appeal).

Because Appellant untimely filed her motion to transfer venue, we overrule Appellant's fourth argument that venue was improper in Jones County.

*Validity of the May Will*

Appellant argues that the May Will is not valid because there is evidence that Decedent was unduly influenced by Tisha and that Decedent lacked testamentary capacity due to his illnesses.[4] Appellant contends that Tisha unduly influenced Decedent to change his will because he was dependent upon her for care and transportation, and because she was present when the May Will was signed. Appellant also claims that it was unnatural for Decedent to both question the paternity of L.B. and to disinherit L.B., particularly as he was still attempting to contact his son for visitation after the May Will was executed.

*Standard of Review*

When we review a trial court's factual determinations, we apply the same standards of review that we use in reviewing the evidence in support of a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards." (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994))); *see also Burt v. Francis*, 528 S.W.3d 549, 553 (Tex. App.—Eastland 2016, no pet.). Under either standard, the trial judge is the sole judge of

---

[4]In her brief filed before this court, Appellant first challenges the validity of the May Will due to "undue influence" exerted upon testator, and then, Appellant challenges testamentary capacity. As a matter of law, undue influence implies the existence of testamentary capacity. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Thus, a testator must first have testamentary capacity before they may be unduly influenced. While analytically it may make more sense to address testamentary capacity first, we will address the issues in the order presented for our review by Appellant.

the credibility of witnesses and the weight to be given their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *In re Estate of Scott*, 601 S.W.3d 77, 88 (Tex. App.—El Paso 2020, no pet.).

To analyze a legal sufficiency challenge, we must determine whether the evidence presented would enable reasonable and fair-minded people to make the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. If conflicting evidence can be resolved either way, we must presume the factfinder did so in favor of the prevailing party and disregard the conflicting evidence. *Id.* at 821.

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant did not bear the burden of proof, we sustain that challenge "if our review of the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)). However, "if the evidence is so weak that it only creates a mere surmise or suspicion," then that is legally equivalent to "no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). When, on the other hand, an appellant attacks the legal sufficiency of an adverse finding on an issue for which the appellant bore the burden of proof, the appellant "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

When reviewing a factual sufficiency challenge, we "must consider and weigh all of the evidence," not just the evidence that supports the trial court's finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We must review the evidence in a neutral light. *Woods v. Kenner*, 501 S.W.3d 185, 196 (Tex. App.—Houston [1st Dist.] 2016, no pet.). When we set aside a judgment on the basis of factually insufficient evidence to support a vital finding, we must detail the evidence relevant to the issue and specify how the contrary evidence greatly outweighs the evidence in support of the finding. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). No such explanation is required when we affirm a judgment. *Thomas v. Uzoka*, 290 S.W.3d 437, 453 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Ellis*, 971 S.W.2d at 407).

When a party attacks the factual sufficiency of an adverse finding on an issue for which it had the burden of proof, it must demonstrate on appeal "that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). When a party challenges the factual sufficiency of the evidence supporting a trial court's finding on an issue for which it did not have the burden of proof, we will set aside the finding only if the evidence in support of the finding is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cowan v. Worrell*, 638 S.W.3d 244, 253 (Tex. App.—Eastland 2022, no pet.); *see Pool*, 715 S.W.2d at 635; *In re Estate of Hemsley*, 460 S.W.3d 629, 637 (Tex. App.—El Paso 2014, pet. denied).

*Applicable Law and Analysis*

1.    *Undue influence in execution of the May Will was not proven*

Undue influence implies the existence of a testamentary capacity subjected to and controlled by a dominant influence or power. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). To establish undue influence, the contestant must prove:

(1) the existence and exertion of an influence (2) that subverted or overpowered the testator's mind when he executed the will, (3) such that he executed a will that he would not have otherwise executed but for the influence. *Id.* Not every influence amounts to undue influence. *Id.* The presence of undue influence is usually subtle and may be proved by circumstantial evidence. *Id.* The circumstances relied on to establish undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of such influence. *In re Kam*, 484 S.W.3d 642, 652 (Tex. App.—El Paso 2016, pet. denied). The burden of proving undue influence is upon the party contesting its execution. *Rothermel*, 369 S.W.2d at 922. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence. *Id.*

We consider ten non-exhaustive factors when determining whether undue influence exists. *See Rothermel*, 369 S.W.2d at 923. The first five factors concern whether the proponent exerted any influence over the testator, considering:

    (1) the nature and type of relationship between the testator, contestant, and proponent;

    (2) the opportunities existing for the exertion of the type of influence or deception possessed or employed;

    (3) the circumstances surrounding the drafting and execution of the will;

    (4) the existence of a fraudulent motive; and

    (5) whether there has been habitual subjection of the testator to the control of another.

*Id.* The next four factors are used to determine whether the testator's will was subverted or overpowered by any influence exerted by the proponent, considering:

    (6) the state of the testator's mind at the time he executed the will;

8

(7) the testator's mental or physical incapacity to resist such influence or the susceptibility of the testator's mind to the type and extent of influence exerted;

(8) the words and acts of the testator; and

(9) the testator's weakness of mind and body, whether a result of age, disease, or otherwise.

*Id.* Finally, the tenth factor is relevant to determining whether the will would have been executed in the absence of the influence exerted by the proponent, considering:

(10) whether the will executed is unnatural in its disposition of the testator's property. *Id.*

Appellant, as the contestant of the May Will, had the burden of proving undue influence. *Id.* at 922. No two suits alleging undue influence are the same. *Id.* at 921. The outcome of each case depends on its own unique facts. *See In re Estate of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *14 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.). The distinction between evidence that is sufficient to show undue influence and that which is merely suspicious defies articulation; it essentially is a matter of degree. *Id.* (citing *Boyer v. Pool*, 280 S.W.2d 564, 566 (1955)). Appellant points to *Estate of Russey* as authority for the consideration of five possible facts, which can together support undue influence: (1) the need for money by the influencer; (2) the testator's dependence on the influence for care and transportation; (3) the influencer's reinterpretation of historical events in a negative light about testator's children; (4) the influencer's presence when the will was signed and the lack of presence of any family members; and (5) an unnatural disposition—such as the disinheritance of a child. *See Estate of Russey*, No. 12-18-00079-CV, 2019 WL 968421, at *3 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.).

Appellant claims that there is evidence of the same type facts from *Russey*, which support that Decedent was unduly influenced when he executed the May Will.

9

Specifically, Appellant argues that Decedent was dependent upon Tisha as his caretaker, that Tisha reinterpreted the relationship between L.B. and Decedent to be negative, that Tisha was present when Decedent signed the May Will, and that disinheriting L.B. and giving Tisha more in the May Will than in the December Will provided an unnatural disposition. Appellant also claims that Tisha prevented Decedent from communicating with L.B. Appellant further argues that a broken Rule 11 Agreement made by the parties in the divorce case—that the December Will would be in effect until the divorce was finalized—is further evidence of undue influence exerted upon Decedent. In addition, Appellant argues that, because the December Will only included a small bequest to Tisha, the shift to her receiving Decedent's entire estate in the May Will was illustrative of Tisha's influence. Appellant testified that the health ailments Decedent suffered made him susceptible to being influenced, which in turn caused him to create the May Will.

Tisha testified that it was not unusual for Decedent to disinherit a son, as he had another son whom he completely disinherited in both wills. Tisha also testified that she became the caretaker for Decedent after he came to live with her and that she and Decedent always had a close relationship. Further, even Appellant testified that Decedent and Tisha were "very close . . . they had a lot in common and were probably best friends." Tisha and Decedent's attorney both testified that Decedent lived with Tisha and was dependent on Tisha for his care and transportation, and that Tisha was present in the attorney's office—but not in the same room—when the will was signed. Despite her presence in the attorney's office, Tisha maintained that she never read one of Decedent's wills prior to his death, and that she never discussed the wills with him. Tisha testified that she did not know Decedent would leave "it all" to her. There was no evidence presented that Tisha had any need for money, and Tisha testified that she did not speak with Decedent's attorney about the will before, during, or after the signing of the will.

As to the legal sufficiency, Appellant needed to "demonstrate on appeal that the evidence establishe[d], as a matter of law, all vital facts in support of the issue." *Dow Chem. Co*, 46 S.W.3d at 241. Appellant, as the contestant of the May Will, had the burden of proving undue influence. *Rothermel*, 369 S.W.2d at 922. Undue influence requires (1) the existence and exertion of an influence (2) that subverted or overpowered the testator's mind when he executed the will, (3) such that he executed a will that he would not have otherwise executed but for the influence. *Id.*

As to the first requirement, that there be an existence and exertion of influence, there was only evidence related to two of the five factors: (1) the nature and type of relationship between the testator, contestant, and proponent and (2) the opportunities existing for the exertion of the type of influence or deception possessed or employed. *See id.* at 923. Ultimately, Appellant failed to provide any evidence other than the opportunity for influence by a person in a caregiver role. However, the existence of a caregiver relationship alone is not enough to establish undue influence. *See Neal v. Neal*, No. 01-19-00427-CV, 2021 WL 1031975, at *9 (Tex. App.—Houston [1st Dist.] Mar. 18, 2021, no pet.) (mem. op.) (opportunity alone is not enough to infer the exertion of undue influence); *see also Estate of Scott*, 601 S.W.3d 77, 90 (Tex. App.—El Paso 2020, no pet.) (explaining that "the fact that an individual had the opportunity to influence the testator, such as by being the testator's caregiver, is insufficient to establish undue influence"). Indeed, "having an opportunity to exert such influence due to being in a position of caring for the person upon whom the influence is supposed to be exerted is equally consistent with the theory of innocence as it is with the theory of wrongdoing." *Rothermel*, 369 S.W.2d at 923.

There is likewise no evidence to support that this "opportunity" actually subverted or overpowered Decedent's mind when he made the May Will. *See id.* at 922. There was testimony from Decedent's attorney that Tisha was not present in

11

the discussions related to the May Will, or any discussions related to Decedent's estate. Further, both Tisha and Decedent's attorney testified that—despite any physical ailments—Decedent appeared to be in his "right mind" at the time the May Will was executed. There was likewise a hearing in the divorce proceeding approximately two weeks before the May Will was signed. No party—including Decedent's attorney, Appellant or her attorney—raised any concerns about Decedent's mental capacity at the time of the hearing.

Appellant has failed to show that the evidence established the existence and exertion of an undue influence as a matter of law. Having the burden of proof, Appellant was required to demonstrate on appeal "that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. As we have noted above, Appellant failed to demonstrate more than a mere opportunity for Appellee to exert an influence over Decedent. Thus, the trial court could not have found that there was undue influence. *See Rothermel*, 369 S.W.2d at 923; *Neal*, 2021 WL 1031975, at *9. The trial court's determination, as the finder of fact, that there was no undue influence is not against the great weight and preponderance of the evidence; indeed, a finding that Tisha even exerted an undue influence over Decedent—absent any questions of whether Decedent succumbed to any such influence or whether the result was a will that would not have existed but for the influence—has no support in the record.

Further, Appellant failed to establish evidence to support the third element necessary for undue influence: that the resulting will would not have been executed but for the influence. *See Rothermel*, 369 S.W.2d at 922. Decedent had raised concerns about the paternity of L.B., who he disinherited by the May Will, but Decedent had also, in this and the previous will, disinherited another child whose paternity was not questioned by the parties. Appellant argues that Decedent loved L.B., and that the May Will "provided an unnatural disposition" in regards to L.B.

12

However, that alone does not indicate that disinheriting a child who does not live with a decedent in the face of questioned paternity is unnatural or was unusual for Decedent. Decedent moved in with Tisha after Appellant filed for divorce and during the midst of those legal proceedings, changed his will to devise his assets to the person with whom he was living at the time. We cannot say that loyalty and blood paternity are undue bases for a decedent to weigh in devising his assets. A change of heirs alone, particularly where unresolved familial issues exist, does not provide evidence or support the notion that such a disposition was a product of undue influence in light of all the facts.

The evidence is legally and factually sufficient to prove that the May Will was executed *without* undue influence. As result, we overrule Appellant's first argument that the evidence was sufficient to demonstrate, notwithstanding the trial court's finding, that Decedent was unduly influenced in executing the May Will.

2. *Lack of testamentary capacity is not shown*

Before a will is admitted to probate, the will proponent bears the burden of proving proper execution by a testator with testamentary capacity at the time of its execution. *Estate of Hogan*, No. 11-20-00170-CV, 2022 WL 2070331, at *3 (Tex. App.—Eastland June 9, 2022, no pet.) (mem. op.). A self-proving will is sufficient to establish a prima facie case. *Id.*; *see also* EST. § 251.101 (Defining self-proved as a will "(1) to which a self-proving affidavit subscribed and sworn to by the testator and witnesses is attached or annexed; or (2) that is simultaneously executed, attested, and made self-proved as provided by Section 251.1045"). A prima facie case is one that presents sufficient evidence as a matter of law to establish a given fact, such as proper execution and/or testamentary capacity, *if it is not evidentiarily rebutted or contradicted*. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). After a prima facie case is established, the burden shifts to the contestant to negate testamentary capacity

of the testator. *Hogan*, 2022 WL 2070331, at *3. The burden of persuasion always remains with the proponent of the will. *Id.*

A testator has testamentary capacity when the testator is able to understand that he or she is making a will, the effect of making the will, and the general nature and extent of his or her property. *Estate of Luce*, 2018 WL 5993577, at *8. The testator must also possess sufficient memory to know the elements of the business transacted and to form a reasonable judgment about them. *Hogan*, 2022 WL 2070331, at *3. The key inquiry is whether the testator had testamentary capacity *at the time* the will was executed. *Id.* This may be inferred from the testimony of lay and expert witnesses regarding the behavior and conduct of the testator prior or subsequent to the execution of the will. *Neal*, 2021 WL 1031975, at *4. If there is evidence of incompetence—and evidence such incompetence persisted or had the probability to persist at the time of the will's making—such evidence may also be used to demonstrate testamentary incapacity. *Id.*

Appellant challenged the May Will before it was admitted to probate, placing the burden of proof on Tisha to prove that Decedent had testamentary capacity at the time the will was executed. *See Hogan*, 2022 WL 2070331, at *3. Here, the May Will was a self-proving will because it was simultaneously executed as required by the guidelines set out in Section 251.1045(a). *See* EST. §§ 251.101, 251.1045(a). As a result, the burden of production shifted to Appellant to show Decedent did not have testamentary capacity at the time the May Will was executed. *See Hogan*, 2022 WL 2070331, at *3. The burden of persuasion remained with Tisha as the proponent of the will. *Id.*

Appellant attempted to satisfy the burden of production through her own testimony. Appellant argued to the trial court that Decedent lacked testamentary capacity because he lacked the sufficient mental ability at the time the May Will was created. The evidence of testamentary incapacity Appellant cites is: (1) that

Decedent doubted that L.B. was his biological child; and (2) that Decedent was chronically ill from diabetes and liver failure which caused him to have high ammonia levels.[5]   Decedent signed the May Will on May 27, 2020, and subsequently, in June 2020, during communication with L.B., Decedent told L.B. that he loved him.  Appellant testified that she does not know why Decedent would have continued to attempt to contact L.B. if Decedent believed he was not L.B.'s father after he signed the May Will.

Despite this testimony, evidence was also submitted that, as of April 20, 2020, Appellant had not spoken to Decedent since February 6, 2020.  Appellant likewise did not remember Decedent attending a virtual hearing on May 13, 2020, even though Decedent's attorney testified that Decedent attended the hearing and there were no concerns by any party as to his mental capacity and ability to participate in the hearing.  The only testimony Appellant provided close to the time of the execution of the May Will was how Decedent appeared during a hearing on June 18, 2020.  Appellant stated that Decedent was not making sense and that he appeared weak and not well groomed.

Appellee cites the counterpetition in the divorce proceeding as evidence that Decedent did not lack testamentary capacity.  The counterpetition was filed on March 24, 2020, denied that Decedent was L.B.'s biological father, and requested genetic testing.  This occurred approximately two months before the May Will was executed on May 27, 2020.  Further, in response to Appellant's argument that Decedent did not have testamentary capacity because he disinherited his son,

---

[5]The significance of high ammonia levels is unclear from the trial record.  At one point, Appellant testified that high ammonia levels could cause Decedent to be agitated, and at another point she testified that even if the ammonia levels were "high on paper," if Decedent was coherent, no action to adjust his medication would be taken.  Appellant stated that the ammonia levels were "adjusted with medication per the doctor . . . he told us how to adjust it."  However, no medical expert testimony or authoritative sources were offered to support Appellant's testimony as a lay witness regarding her perception of the physiological effect of the alleged ammonia levels.  Likewise, there is no testimony regarding the level of Decedent's alleged agitation during or close in time to the execution of the May Will.

15

Appellee correctly points out that the May Will disinherited another biological child of Decedent, implying nothing inconsistent in the disinheritance of L.B. as Decedent's disputed child. Accordingly, Appellant's disinheritance of L.B. does not provide evidence of a lack of testamentary capacity. At the hearing, Appellee relied on testimony from Decedent's attorney that Decedent knew what he was doing and personally requested a new will be drawn up.

As to legal sufficiency, although the self-proving will *alone* is not enough to meet this threshold, the details surrounding the self-proved will are significant. *See Hogan*, 2022 WL 2070331, at *3. Here, the May Will was prepared by Decedent's attorney, witnessed by the attorney and a woman who worked in the building and commonly serves as a witness, and was properly notarized and authenticated. Decedent's attorney testified that he prepared the will according to the terms and conditions requested by Decedent, and that Decedent was given time to review the will prior to signing it. As Appellant provided no evidence showing otherwise, the May Will's self-proving execution is sufficient as a matter of law to establish that the will *was* properly executed—including that Decedent possessed the necessary testamentary capacity. *See Lipsky*, 460 S.W.3d at 590. As such, we hold that the evidence is legally sufficient to support the trial court's finding that Decedent had testamentary capacity when he executed the May Will.

When conducting a factual sufficiency review, we consider all the evidence in a neutral light. *Dow Chem. Co.*, 46 S.W.3d at 242. Appellant was unable to provide some evidence to contradict or negate the existence of testamentary capacity. Appellant had limited contact with Decedent in the months prior to the execution of the May Will and, aside from testimony that on June 18—*after* the May Will was signed—he appeared unkempt and weak, Appellant presented no testimony about his mental capacity *at the time the will was executed*. *See Hogan*, 2022 WL 2070331, at *3. Instead, the only testimony about Decedent's mental capacity at the

16

time the will was executed indicated that Decedent did know that he was executing a new will, and that he understood the implications of such. Further, Decedent questioned the paternity of L.B. in March, nearly two months before the execution of a new will. There was a hearing for the divorce proceeding in May, approximately two weeks before the May Will was signed. At that hearing, no concerns were raised about Decedent's ability to comprehend or participate in the proceeding. Moreover, Appellant discussed a video call between Decedent and L.B. on June 6, 2020. Appellant gave no testimony either way about Decedent's mental capacity or abilities during the call on June 6. Accordingly, we cannot say that the evidence supporting the trial court's finding of testamentary capacity was contrary to the overwhelming weight of the evidence, nor so contrary to be clearly wrong and manifestly unjust. We hold that the evidence is factually sufficient to support the trial court's finding that Decedent had testamentary capacity when the May Will was executed.

The evidence is legally and factually sufficient to affirm that Decedent possessed proper testamentary capacity when the May Will was executed. As result, we overrule Appellant's second argument that Decedent lacked testamentary capacity at the time he executed the May Will.

*Claimed Error Regarding Excluded Evidence Not Preserved*

Appellant argues on appeal that the trial court erred in excluding video and photographic evidence offered to rebut statements made about Decedent's relationship with L.B. Following the trial court's ruling to exclude this evidence, Appellant did not make any offers of proof. Appellee argues that this failure constitutes a waiver on appeal. We agree.

"To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 334–35 (Tex. App.—Dallas 2008,

17

no pet.). The court on appeal may be able to discern from the record the nature of the evidence and the ruling of the trial court, but without an offer of proof, there can be no determination of harm. *Id.* at 335. The proponent of the excluded evidence must preserve the evidence in the record to complain on appeal that the exclusion was error. *Id.*; *see* TEX. R. EVID. 103(a). Further, when no offer of proof is made, the party must introduce the excluded evidence in a bill of exception. *Bobbora*, 255 S.W.3d at 335. When the proponent of the evidence fails to demonstrate the substance of the excluded evidence, the complaint is waived on appeal. *Id.*

Here, Appellant made no adequate offer of proof. Appellant told the trial court that the video shows an "interaction between a father and a son" and that the photographs show L.B. and Decedent interacting. Both statements provide no details about the evidence or descriptions that would allow a harm analysis to be properly completed. There is likewise no bill of exception in the record. As a result, Appellant failed to demonstrate the substance of the excluded evidence, waiving this complaint for appellate review.

In any event, if the complaint had not been waived, we conclude that the trial court did not abuse its discretion by excluding this evidence because Appellant did not disclose it in discovery. We review a trial court's decision to either admit or exclude evidence under an abuse of discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Rule 193.6 of the Texas Rules of Civil Procedure states:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed,

or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). Appellant attempted to introduce a video and photographs as rebuttal evidence. The evidence would purportedly have demonstrated the bond between L.B. and Decedent. Appellee objected to the admission of these items of evidence because Appellant did not identify or produce them during discovery. The trial court sustained Appellee's objections, indicating twice that Appellant could not attempt to create their entire case solely as rebuttal evidence to Tisha's statements that Decedent and L.B. did not have a normal and loving father-son relationship. The trial court did not abuse its discretion by excluding this evidence. We overrule Appellant's third argument regarding excluded evidence.

*This Court's Ruling*

Having overruled all four arguments presented by Appellant, we overrule Appellant's sole issue on appeal that the May Will should not have been entered into probate. We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

November 2, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.