**Affirmed and Memorandum Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00062-CV

---

### DOMINIC MONARITI, Appellant

### V.

### ANTHONY MONARITI AND CATERINA MONARITI, Appellees

---

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Cause No. 486,937**

---

### MEMORANDUM OPINION

Appellant Dominic Monariti ("Dominic") appeals a summary judgment in favor of his siblings, appellees Anthony Monariti ("Anthony") and Caterina Monariti ("Caterina"), setting aside their mother's will and removing a mechanic's lien filed by Dominic against their mother's homestead. In three issues, Dominic asserts that (1) he received defective notice of hearing on appellees' motion for summary judgment; (2) there is a genuine issue of material fact precluding the trial court from setting aside their mother's will; and (3) his mechanic's lien against his

mother's home was valid. We affirm.

## I. BACKGROUND

After his mother's death in April 2020, Dominic initiated probate of her estate, claiming that she was partially testate under a will dated April 23, 2015 ("the Purported Will"). The Purported Will was signed by his mother, Giovanna Monariti ("Giovanna"), notarized, and signed by two witnesses, but addressed only one of her two real properties and none of her other assets:

To whom it may concern this is my last will in testimate for the home I own on

19535 Billineys. Park Drive Ct

Katy,Tx 77449

If in the event of my death I leave the above property to my son Dominic Mario Monariti

In the event my Son is not Alive at the time of my passing I woul like to please leave it to

my grand daughter Crystal Giovanna Monariti

Thank you

Giovanna Monariti



The trial court admitted the Purported Will to probate and originally appointed Dominic as the independent administrator of Giovanna's estate. Anthony and Caterina filed an application to remove Dominic as the estate's independent administrator,[1] an objection to the inventory filed by Dominic,[2] and a

---

[1] The trial court ordered Dominic removed as independent administrator, finding sufficient grounds to support a belief that Dominic had "misapplied or embezzled, or was about to misapply or embezzle, all or part of the property committed to his care."

[2] Dominic's inventory listed two real properties, a car, $3,000.00 in household

contest to Giovanna's Purported Will. Appellees filed a motion for summary judgment seeking (1) to set aside Giovanna's Purported Will for lack of testamentary intent and Dominic's undue influence; and (2) to remove a mechanic's lien filed by Dominic against Giovanna's homestead after her death for alleged construction services that occurred twelve years earlier.

The affidavit and excerpts of testimony presented as evidence and attached to appellees' motion show that Giovanna had been born and raised in Sicily, spoke broken English, and did not read or write English. She relied on her son Anthony to conduct her business, translate documents for her signature, and pay her bills. The evidence also shows that Dominic drafted the Purported Will, drove Giovanna to the bank to sign it, and had it witnessed by two of his long-time friends. Although Dominic claimed he translated the Purported Will to his mother, he testified that the witnesses and notary could not confirm his translation from English to Italian because they "don't speak Italian."

Giovanna's Purported Will also omitted Dominic's siblings, Anthony, Catarina, and Rosalia, their legally disabled sister who lived with and relied on her mother for care. Anthony's affidavit shows that the parties' mother saved $80,000.00 to be used after her death for Rosalia's care and specifically showed Anthony where she kept money and other items in the home she shared with Rosalia. When Anthony tried to enter his mother and Rosalia's home to find a Chase Bank inventory list after their mother's death, Dominic "pulled a gun" and threatened him. Dominic also took $10,000.00 from his mother's estate and gave it to his daughter. Dominic admitted in testimony[3] attached to the motion that he

---

furnishings, and a bank account with $2,548.32 in it. Anthony's affidavit in support of appellees' motion for summary judgment shows that the inventory of their mother's estate should have also listed over $80,000.00 in cash and jewelry.

[3] The excerpts of testimony attached to appellees' motion for summary judgment indicate

3

rented the property addressed in the Purported Will to a tenant, depositing $1,275.00 a month into his personal account, which he averred he used to pay a mortgage on the property.

As to the mechanic's lien, Dominic's testimony shows that two months after Giovanna's death, he filed a $200,000.00 lien against his mother's and Rosalia's home. Although his mother and Rosalia owned the home, Dominic was the sole insured on the homeowner's policy. After a 2008 fire at the home, homeowner's insurance had paid $200,000.00 for repairs. Dominic stated that he performed some of the repairs on the home after the fire and also supervised other contractors. Dominic testified that he filed the construction lien for $200,000.00 plus interest "based off the amount that was paid by insurance," which he admitted was more than the appraised value of the home. However, he did not file the lien until twelve years after completion of the work.[4]

The trial court granted appellees' motion for summary judgment on August 23, 2023, a year after the motion was submitted. This appeal followed.

## II. DEFECTIVE NOTICE OF HEARING

In his first issue, Dominic contends that the trial court erred in granting summary judgment to appellees because he received a defective notice of hearing.

Appellees electronically filed a notice of hearing on July 19, 2022, setting a hearing on their motion for summary judgment twenty-one days later on August 9,

that Dominic testified to these facts as a witness in a hearing before the trial court. The record does not include a complete transcript of Dominic's testimony and thus does not identify the date of his testimony, the hearing in which he testified, or whether his testimony was made under oath. When appellees attached these excerpts to their summary judgment motion, Dominic did not object or contest the accuracy of the excerpts.

[4] *See* Tex. Prop. Code Ann. § 53.052(a)(2) (for residential construction projects, affidavit must be filed with the county clerk "not later than the 15th day of the third month in which the original contractor's work was completed, terminated, or abandoned").

2022. Their notice erroneously stated that the hearing would occur at 1:30 a.m. instead of 1:30 p.m. The day before the hearing, appellees filed an amended notice of hearing, correcting the time of the hearing to 1:30 p.m. [3 CR pdf 152]. Dominic appeared at the hearing on August 9, 2022, and asked the trial court for additional time to respond to the motion. The trial court gave Dominic fourteen additional days to file a response and told the parties the Court would determine the motion on the fifteenth day. Despite being given a fourteen-day extension, Dominic did not file a response to the motion for summary judgment.

A movant is required to give at least twenty-one days' notice of hearing on a motion for summary judgment. Tex. R. Civ. P. 166a(c); *LeNotre v. Cohen*, 979 S.W.2d 723, 726 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). The reasoning behind the twenty-one-day requirement is to give the nonmovant sufficient time to prepare and file a response. *LeNotre*, 979 S.W.2d at 726. If the hearing is reset, a nonmovant is entitled only to reasonable notice, at least seven days, of the new hearing date. *See id.* Here, the trial court postponed its consideration of the motion for summary judgment to August 24, 2022. The trial court gave appellant until August 23, 2022, an additional fourteen days, to file a response. This is reasonable notice of a reset date. *See id.* We overrule Dominic's first issue.[5]

---

[5] Even if the trial court had not granted appellant fourteen additional days to respond and had not postponed its consideration of the motion, appellant did not object to defective notice at the hearing on August 9, 2022. "If a party receives notice that is untimely, but sufficient to enable the party to attend the summary judgment hearing, the party must file a motion for continuance or raise the complaint of late notice in writing, supported by affidavit evidence, and raise the issue before the trial court during the summary judgment hearing." *Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 560 (Tex. App.—Dallas 2003, pet. denied); *see also Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at * 4 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (nonmovant who knows of hearing date before it occurs waives insufficient notice if nonmovant fails to bring the defect to the trial court's attention at or before the erroneously scheduled hearing or submission date). Appellant did not file a written

### III. INVALIDITY OF PURPORTED WILL

In his second issue, Dominic contends there is a genuine issue of material fact precluding summary judgment in favor of appellees to set aside Giovanna's Purported Will. Appellees asserted in their motion for summary judgment that the Purported Will was invalid because their mother lacked testamentary intent and because of undue influence by Dominic. Because undue influence is dispositive of this issue, we address it first.

### A.  Standard of Review

The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A movant is entitled to summary judgment on a claim for which it has the burden of proof if it conclusively establishes each element of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Martin v. Palmer*, 1 S.W.3d 875, 876 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (applying this standard in probate proceedings). We apply de novo review to a traditional summary judgment under Rule 166a(c), using the same standard that the trial court used in the first instance. *Doggett v. Robinson*, 345 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

### B.  Applicable Law & Analysis

Undue influence is a ground for setting aside a will distinct from lack of testamentary capacity. *Estate of Danford*, 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018, no pet); *Mynard v. Degenhardt*, No. 14-22-00773-CV,

---

motion or complaint supported by affidavit at or before the August 9, 2022, hearing.

2023 WL 8943364, at *5 (Tex. App.—Houston [14th Dist.] Dec. 28, 2023, pet. filed) (mem. op.). Undue influence implies the existence of testamentary capacity, but occurs when there is evidence showing the testator is subject to and controlled by a dominant influence or power. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). "The burden of proving undue influence is upon the party contesting [a will's] execution." *Id*. Before a will can be set aside because of undue influence, the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of that influence so as to subvert or overpower the testator's mind at the time of the execution of the testament; and (3) the execution of a testament which the maker would not have executed but for such influence. *Id.* The elements of undue influence may be established through direct and circumstantial evidence. *Id*. "[E]ach element is necessary to establish a claim of undue influence." *In re Estate of Sidransky*, 420 S.W.3d 90, 95 (Tex. App.—El Paso 2012, pet. denied).

For the first element, the will contestant must show that an influence existed and was exerted. *Rothermel*, 369 S.W.3d at 922. Factors for this element include (1) the nature and type of relationship existing between the testator, contestant, and party accused of exerting undue influence; (2) the opportunities for exerting such influence; (3) the circumstances surrounding the drafting and execution of the will; (4) the existence of a fraudulent motive; and (5) whether the testator was habitually under another's control. *Id*. at 923.

Here, appellees' evidence establishes that the testator, Giovanna, was the mother of the contestants, Anthony and Caterina, and of the party accused of undue influence, Dominic. In his affidavit, Anthony averred that Giovanna spoke daily with him and relied on him to pay bills, conduct business for her, and translate English to Italian when she needed to sign documents. Anthony further averred

7

that Giovanna repeatedly expressed concern about the future care of a fourth sibling, Rosalia, who suffers from mental disabilities and is unable to take care of herself without assistance. Rosalia lived with Giovanna, and Giovanna had previously shown Anthony where $80,000.00 in cash was located in her home for the purpose of taking care of Rosalia after Giovanna passed away.[6] Giovanna "never mentioned any sort of Will," much less the Purported Will that she had signed five years before her death that omitted Rosalia or anyone other than Dominic and Dominic's daughter.

As to the existence of a fraudulent motive and whether the testator was habitually under another's control, the summary judgment evidence shows that Dominic "has not worked in many years" and "lived off" of Giovanna's and Rosalia's disability income. Dominic had previously been the sole insured on a homeowner's insurance policy for his mother's homestead, although his mother and Rosalia were the actual property owners. During probate proceedings, despite having been removed as the independent administrator, Dominic was renting out one of his mother's houses and depositing the $1,275.00 monthly rent into his personal account.[7] He was living n his mother and Rosalia's home and would not allow Anthony inside to check Giovanna's assets and an inventory list.[8] Before he was removed as the independent administrator, Dominic also removed $10,000.00 from his mother's estate and gave it to his daughter. Further, the evidence showed

---

[6] The evidence includes a letter from counsel for appellees, which states that Dominic forcefully removed Rosalia from the home and took her to the hospital in June 2021, while still retaining Rosalia's personal property and receiving Rosalia's Social Security disability payments. While Rosalia was at the hospital, doctors discovered that Dominic had not been properly caring for her and contacted Adult Protective Services.

[7] Dominic stated in testimony that he used this money to pay the mortgage on the house.

[8] Anthony averred in his affidavit that Dominic had prevented Anthony's entrance into Giovanna's home after her death: "Dominic pulled a gun on me and threatened to sick [sic] his two (2) dogs on me."

8

that Dominic was on bond for felony possession of a controlled substance. It appeared to Anthony that Dominic was taking his mother's assets to pay for his "drug habits and lifestyle." *See Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex. App.—Texarkana 1995, writ denied) (circumstances bearing on undue influence include the motive, character, and conduct of the persons benefited by the instrument).

As to the circumstances surrounding the drafting and execution of the will, the summary judgment evidence showed that Dominic "typed up" the Purported Will himself, took his mother to a bank, and had her sign it in the presence of two witnesses he testified had been his friends for forty years. Dominic testified that he translated the Purported Will from English to Italian, which neither the witnesses nor the notary spoke. *See id.* (considering the participation by the beneficiary in preparation or execution of the instrument). Anthony reasoned that Dominic had not translated the Purported Will correctly for their mother because "my mom would never have cut Rosalia out" and because Dominic did not tell his other siblings that he was taking their mother to sign the Purported Will.

To support the second *Rothermel* element, appellees were required to establish that Dominic exerted an influence over Giovanna that subverted or overpowered her mind at the time she signed the Purported Will. *Rothermel*, 369 S.W.3d at 922. The factors used to determine this element are (1) the testator's state of mind at the time she executed the Purported Will; (2) the testator's mental or physical incapacity to resist or the susceptibility of the testator's mind to the type and extent of the influence exerted; (3) the testator's words and acts; and (4) the testator's weakness of mind and body, whether a result of age, disease, or otherwise. *Id.* at 923; *Altice v. Hernandez*, 668 S.W.3d 399, 414 (Tex. App.— Houston [1st Dist.] 2022, no pet.). Concerning these factors, Anthony asserted in

his affidavit that Italian was Giovanna's primary language; she spoke broken English; and she required a translator and assistance to conduct her business, understand documents, and to pay bills. There is also circumstantial evidence that Giovanna did not know that she was signing a will. Dominic testified in probate proceedings that he did not think the document he drafted would be construed as a will: "I thought it was just signing the house over to me. I didn't think it was going to be like anything else." He explained that "I didn't know it was actually — she had to list anything else. It was just my — the house was my house. So I said in case anything ever happened to my mom, I said just let them know that's mine and just sign it over to me." Construing Dominic's explanation based on his testimony, if he was unaware that he had prepared a will, then it is unlikely that he explained in English or Italian to his mother that she was signing a will.

Finally, the third *Rothermel* element is whether the will would have been executed in the absence of the influence exerted by the proponent. *Rothermel*, 369 S.W.2d at 923. Under this element, the factor considered is whether the will executed is unnatural in its disposition of the testator's property. *See In re Kam*, 484 S.W.3d 642, 652 (Tex. App.—El Paso 2016, pet. denied). If the testator prefers one close relative over another in a will, and there is no reasonable explanation, this may be considered as a "badge of disorder or lapsed mentality or of its subjugation." *Id.* at 653. As to this element, the trial court also considers the testator's stated desires and actions. *See Estate of Johnson*, 340 S.W.3d 769, 784 (Tex. App.—San Antonio 2011, pet. denied).

Here, the summary judgment evidence shows that Giovanna consistently expressed her wishes to provide for her disabled daughter, Rosalia, not for Dominic, not for Dominic's daughter, and not for Anthony and Catarina. There is nothing in the record to explain her disregard of Rosalia in the Purported Will. *See*

10

*In re Estate of Scott*, 601 S.W.3d 77, 94, 98 (Tex. App.—El Paso 2020, no pet.) (testator had expressed a desire to die intestate and said nothing about wishing to disinherit his heirs). Anthony's affidavit and Dominic's testimony also show that Giovanna did not make a will until Dominic drafted the Purported Will and drove her to the bank to have it signed, witnessed, and notarized. Because Dominic himself professed to not understand that the document he created was a will, it is implausible that he explained to her in Italian that she was executing a will.

Appellees' evidence established the three elements of undue influence. It then became Dominic's burden to raise a fact issue on at least one of these elements. *See Centeq Rlty., Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Having failed to file controverting evidence, Dominic failed to raise an issue of material fact regarding undue influence. Thus, the trial court did not err in granting appellees' motion for summary judgment on the grounds of undue influence and setting aside the Purported Will as invalid. We overrule issue two.

## IV. MECHANIC'S LIEN

In his third issue, Dominic contends that his mechanic's lien on his mother and Rosalia's home is valid because he owns between one-half or one-sixth of the home and could waive the requisites of the Texas Property Code for his lien. However, Dominic has not provided citation to authority in support of his argument. Nor has he provided specific citation to the record. "Adequate appellate briefing entails more than mentioning arguments in passing." *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 344 (Tex. App.—Houston [14th Dist.] 2017, no pet.). An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i). We interpret this requirement reasonably and liberally, yet also enforce briefing rules that require the appellant to put forth specific argument and analysis

showing that the record and the law supports the appellant's contention. *Reynoso*, 541 S.W.3d at 334. Because Dominic's argument does not include citation to authority or the record, he has waived this issue. We overrule issue three.

Having overruled Dominic's three issues, we affirm the judgment of the trial court.

/s/    Margaret "Meg" Poissant
        Justice

Panel consists of Justices Hassan, Poissant, and Wilson.